UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

**Leonid Goldstein**,

        Plaintiff,

   v.

**Climate Action Network**; **Ceres Inc.**; **Rockefeller Brothers Fund Inc.**; **Generation Investment Management LLP**; the **Ford Foundation**; the **Pew Charitable Trusts**; **Greenpeace International Corp.**; **Environmental Grantmakers Association Corp.**, the **Consultative Group on Biological Diversity Corp.**; the **Sierra Club Foundation Corp.**; **World Wide Fund for Nature Trust**; **US Climate Action Network Corp.**; **Global Call for Climate Action Corp.**; **Generation Investment Management US LLP**; **Alliance for Climate Protection Corp.**; **Fenton Communications Corp.**; **World Wildlife Fund, Inc.**; **Greenpeace Inc.**; **Greenpeace Fund Inc.**; **Friends of the Earth International Corp.**; **Friends of the Earth US Corp.**; **Friends of the Earth (Action) Inc.**; **Environmental Defense Fund Inc.**; **Environmental Defense Action Fund Corp.**; **Natural Resources Defense Council Inc.**; **NRDC Action Fund Corp.**; **Sierra Club Corp.**; **Earthjustice Corp.**; the **Union of Concerned Scientists Inc.**; the **Pew Memorial Trust**; **J. Howard Pew Freedom Trust**; **Mabel Pew Myrin Trust**; **J.N. Pew Jr. Charitable Trust**; the **John D. and Catherine T. MacArthur Foundation**; the **William & Flora Hewlett Foundation**; the **David and Lucile Packard Foundation**; **Tides Foundation Corporation**; **Tides Center Corporation**; **ClimateWorks Foundation**; and the **Energy Foundation**,

        Defendants.

Case 5:16-cv-00211-C

## CERTAIN DEFENDANTS'
## BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

Stephen M. Ryan (*pro hac vice* pending)
D.C. Bar No. 359099
sryan@mwe.com
Sam C. Neel (*pro hac vice* pending)
D.C. Bar No. 1027756
sneel@mwe.com
The McDermott Building
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, DC 20001
(202) 756-8000
(202) 756-8087 fax

*Attorneys for The Ford Foundation*

W. Brad Nes
Texas State Bar No. 24051109
brad.nes@morganlewis.com
MORGAN, LEWIS & BOCKIUS, L.L.P.
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202)739-5779
Facsimile:  (202)739-3001

*Attorney for The Pew Charitable Trusts*

Matthew E. Miller (*pro hac vice* pending)
mmiller@foleyhoag.com
Kevin J. Conroy (*pro hac vice* pending)
kjconroy@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
(617) 832-7000 fax

*Attorneys for Ceres, Inc.*

Lawrence M. Doss (Tex. Bar No. 24012544)
LDoss@mhba.com
MULLIN HOARD & BROWN, L.L.P.
Post Office Box 2585
Lubbock, Texas 79408
806.765.7491
806.765.0553 fax

*Attorney for Climate Action Network, US
Climate Action Network, Rockefeller Brothers
Fund Inc., Ceres Inc., Environmental
Grantmakers Association Corp., Sierra Club
Foundation Corp., and The Ford Foundation*

Lindsey B. Cohan (Tex. Bar No. 24083903)
Lindsey.Cohan@dechert.com
DECHERT LLP
300 W. 6th Street, Suite 2010
Austin, Texas 78731
512.394.3000

*Attorney for Generation Investment Management
LLP and Generation Investment Management US
LLP*

Thomas R. Burke
DAVIS WRIGHT TREMAINE, LLP
Suite 800
505 Montgomery Street
San Francisco, California  94111-6533
(415) 276-6552
thomasburke@dwt.com

Lacy H. Koonce, III
DAVIS WRIGHT TREMAINE, LLP
Avenue of the Americas, 21st Floor
New York, NY 10020-1104
(212) 603-6467
lancekoonce@dwt.com

*Attorneys for Sierra Club Foundation*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.      THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL
        JURISDICTION. ...................................................................................................... 2

        A.      Defendants Are Not Subject to General Personal Jurisdiction in Texas. ............... 3

        B.      Plaintiff Fails To Allege Any Basis for Specific Personal Jurisdiction. .................. 4

        C.      Exercising Personal Jurisdiction Over Any Defendant Would Offend
                Traditional Notions of Fair Play and Substantial Justice. ....................................... 6

        D.      The "Ends of Justice" Do Not Require Exercising Jurisdiction. ............................ 6

II.     VENUE IS IMPROPER. .......................................................................................... 8

III.    PLAINTIFF FAILED TO PROPERLY SERVE SPECIFIC DEFENDANTS. .................. 9

IV.     PLAINTIFF FAILED TO STATE A PLAUSIBLE CLAIM UNDER CIVIL RICO. ....... 10

        A.      Plaintiff Has Not Plausibly Alleged Any Predicate Acts of Racketeering. ............ 11

                1.      Plaintiff's Embezzlement Claim Does Not Meet Rule 9(b)'s
                        Heightened Pleading Requirements. ........................................................ 12

                2.      Plaintiff's Other Allegations of Predicate Acts Do Not Meet
                        Federal Pleading Standards. ..................................................................... 14

                        a.      Bribery. ......................................................................................... 14

                                (i)      Bribery of Witnesses. .......................................................... 14

                                (ii)     Bribery of Officials. ............................................................ 16

                        b.      Retaliation. .................................................................................... 17

                        c.      Witness Tampering. ....................................................................... 18

        B.      Plaintiff Fails To Allege Racketeering Activity Conducted by a Distinct
                RICO Enterprise. .............................................................................................. 20

C.      Plaintiff Cannot Establish Standing Under Section 1962 Because He Has Not Suffered a Cognizable Injury That Was Caused by the Alleged Predicate Acts...................................................................................... 23

    1.      Plaintiff Fails To Allege a Cognizable Injury............................................ 23

    2.      Plaintiff Cannot Allege Causation. ........................................................... 26

    3.      Plaintiff Fails To Allege an Investment Injury as Required To State a Claim Under § 1962(a)........................................................................... 28

D.      Plaintiff's Claims Are Barred by Civil RICO's Four-Year Statute Of Limitations. ...................................................................................................... 29

E.      Plaintiff's Claims Implicate the First Amendment. ............................................. 30

    1.      Advocacy Is Protected Speech Under the First Amendment. ................... 31

    2.      All of Plaintiff's Claims Are Based on Protected Speech......................... 33

    3.      Plaintiff Cannot Recast Defamation as Other Claims To Avoid a First Amendment Challenge. ................................................................... 34

CONCLUSION ..................................................................................................................... 36

CERTIFICATE OF SERVICE ............................................................................................. 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Singh*,
  480 F.3d 351 (5th Cir. 2007) ...................................................29

*Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*,
  483 U.S. 143 (1987) ...............................................................29

*Allstate Ins. Co. v. Benhamou*,
  Civ. Action No. 4:15-CV-00367, 2016 WL 3126423 (S.D. Tex. June 2, 2016) ...................22

*Angelich v. MedTrust, LLC*,
  910 F. Supp. 2d 128 (D.D.C. 2012) ...........................................10

*Anza v. Ideal Supply Corp.*,
  547 U.S. 451 (2006) ...............................................................27

*Asgeirsson v. Abbott*,
  696 F.3d 454 (5th Cir. 2012) ...................................................24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................ *passim*

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................10, 14, 17

*Blatty v. N.Y. Times Co.*,
  728 P.2d 1177 (Cal. 1986) .....................................................34

*Bonton v. Archer Chrysler Plymouth, Inc.*,
  889 F. Supp. 995 (S.D. Tex. 1995) ...........................................13

*Bose Corp. v. Consumers Union of U.S., Inc.*,
  466 U.S. 485 (1984) ...............................................................35

*Boyle v. United States*,
  556 U.S. 938 (2009) ...............................................................21

*In re Brokerage Anti. Litig.*,
  618 F.3d 300 (3d Cir. 2010) ...................................................21

*Calcasieu Marine Nat'l Bank v. Grant*,
  943 F.2d 1453 (5th Cir. 1991) ...............................................11

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001)................................................................................21

*Chaney v. Dreyfus Serv. Corp.*,
    595 F.3d 219 (5th Cir. 2010) ...............................................................12

*Citizens Against Rent Control/Coalition for Fair Hous. v. Berkeley*,
    454 U.S. 290 (1981)...............................................................................32

*Container Mfg. Inc. v. CIBA-GEIGY Corp.*,
    870 F. Supp. 1225 (D.N.J. 1994) .........................................................33

*County of El Paso, Tex. v. Jones*,
    No. 09-cv-00119, 2009 WL 4730305 (W.D. Tex. Dec. 4, 2009) ..........15

*Credit Suisse Sec. (USA) LLC v. Simmonds*,
    132 S. Ct. 1414 (2012) (quoting *John R. Sand & Gravel Co. v. United States*,
    552 U.S. 130 (2008))........................................................................29, 30

*Creed Taylor, Inc. v. CBS, Inc.*,
    718 F. Supp. 1171 (S.D.N.Y. 1989).......................................................5

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014).............................................................................4

*Dist. 1199P Health & Welf. Plan v. Janssen, L.P.*,
    No. 07-cv-2860, 2008 WL 5413105 (D.N.J. Dec. 23, 2008).................15

*Domain Prot. LLC v. Keating*,
    Civ. Action No. 3:15-CV-2244-L, 2016 WL 5661649 (N.D. Tex. Sept. 30,
    2016) .......................................................................................................6

*Druz v. Boro of Manasquan*,
    No. 05-cv-4088, 2006 WL 1098029 (D.N.J. Apr. 3, 2006)...................18

*Eaves v. Designs for Fin., Inc.*,
    785 F. Supp. 2d 229 (S.D.N.Y. 2011)...................................................12

*Evans v. City of Chi.*,
    434 F.3d 916 (7th Cir. 2006), *vacated on other grounds by Hill v. Tangherlini*,
    724 F.3d 965 (7th Cir. 2013) ...............................................................24

*Ezike v. Mittal*,
    No. 08-cv-1867, 2009 WL 506867 (N.D. Cal. Feb. 27, 2009).........18, 20

*Farah v. Esquire Magazine*,
    736 F.3d 528 (D.C. Cir. 2013) .............................................................35

iv

*Fiduciary Network, LLC v. Buehler*,
   Civ. Action No. 3:15-cv-0808, 2015 WL 2165953 (N.D. Tex. May 8, 2015) .........................3

*Films of Distinction, Inc. v. Allegro Film Prods., Inc.*,
   12 F. Supp. 2d 1068 (C.D. Cal. 1998) ...................................................................................35

*Florance v. Buchmeyer*,
   500 F. Supp. 2d 618 (N.D. Tex. 2007) ...................................................................................32

*Flores v. Koster*,
   Civ. No. 3:11-CV-0726-M-BH, 2013 WL 4874117 (N.D. Tex. June 28, 2013).....................7

*Flores v. Koster*,
   Civ. No. 3:11-CV-0726-M-BH, 2013 WL 506555 (N.D. Tex. Jan. 14, 2013)....................2, 3

*Gatz v. Pensoldt*,
   271 F. Supp. 2d 1143 (D. Neb. 2003).......................................................................................8

*Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*,
   786 F.3d 400 (5th Cir. 2015) .................................................................................................23

*Goldstein v. MCI Worldcom*,
   340 F.3d 238 (5th Cir. 2003) .................................................................................................14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)..................................................................................................................4

*Guimbellot v. Rowell*,
   184 F. App'x 447 (5th Cir. 2006) ...........................................................................................34

*Hamm v. Rhone-Poulenc Rorer Pharms.*,
   187 F.3d 941 (8th Cir. 1999) .................................................................................................24

*Hastey v. Bush*,
   No. Civ. A. 503CV0088C, 2003 WL 22289885 (N.D. Tex. Oct. 6, 2003)
   (Cummings, J.)...................................................................................................................23, 26

*Hecht v. Commerce Clearing House, Inc.*,
   897 F.2d 21 (2d Cir. 1990).....................................................................................................25

*Hemi Grp., LLC v. City of N.Y.*,
   559 U.S. 1 (2010) (plurality opinion) ....................................................................................27

*Holmes v. Sec. Investor Prot. Corp.*,
   503 U.S. 258 (1992).................................................................................................................27

*Houston v. Manheim-New York*,
   475 F. App'x 776 (2d Cir. 2012) ............................................................................................20

*Hustler Magazine, Inc. v. Falwell,*
   485 U.S. 46, 50, 54–57 (1988).........................................................................34

*Idema v. Wager,*
   120 F. Supp. 2d 361 (S.D.N.Y. 2000)..............................................................35

*Ironworkers Local Union 68 v. AstraZeneca Pharms., LP,*
   634 F.3d 1352 (11th Cir. 2011) ......................................................................23

*Joe N. Pratt Ins. v. Doane,*
   No. 07-cv-07, 2008 WL 819011 (S.D. Tex. Mar. 20, 2008) .................................13

*Jones v. Alcoa, Inc.,*
   339 F.3d 359 (5th Cir. 2003) .........................................................................14

*Jordan v. Maxfield & Oberton Holdings LLC,*
   3:15-CV-220-CWR-LRA, 2016 WL 1173100 (S.D. Miss. Mar. 22, 2016)...............7

*Joseph v. Bach & Wasserman, LLC,*
   487 F. App'x 173 (5th Cir. 2012) .............................................................29, 30

*Kalimantano GmbH v. Motion in Time, Inc.,*
   939 F. Supp. 2d 392 (S.D.N.Y. 2013).............................................................19

*Kaye v. D'Amato,*
   357 F. App'x 706 (7th Cir. 2009) ..................................................................17

*Khurana v. Innovative Health Care Sys., Inc.,*
   130 F.3d 143 (5th Cir. 1997), *vacated sub nom. Teel v. Khurana,* 525 U.S. 979
   (1998)........................................................................................................24

*Kimberlin v. Nat'l Bloggers Club,*
   No. GJH-13-3059, 2015 WL 1242763 (D. Md. Mar. 17, 2015)...........................24

*Koch Indus., Inc. v. Doe,*
   No. 2:10CV1275DAK, 2011 WL 1775765 (D. Utah May 9, 2011) .......................35

*Liu v. Hopkins Cnty.,*
   Civ. Action No. 14-cv-1762 (TSC), 2015 WL 4978682 (D.D.C. Aug. 20,
   2015) .........................................................................................................9

*Lockheed Martin Corp. v. Boeing Co.,*
   357 F. Supp. 2d 1350 (M.D. Fla. 2005)...........................................................15

*Master Capital Sols. Corp. v. Araujo,*
   456 S.W.3d 636 (Tex. App. 2015)..................................................................10

*In re MasterCard Int'l, Inc., Internet Gambling Litig.*,
    132 F. Supp. 2d 468 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002) ............................11

*McKinney v. State of Ill.*,
    720 F. Supp. 706 (N.D. Ill. 1989) ........................................................................................18

*Moldea v. N.Y. Times Co.*,
    22 F.3d 310 (D.C. Cir. 1994) ...............................................................................................35

*Monkton Ins. Servs. v. Ritter*,
    768 F.3d 429 (5th Cir. 2014) .........................................................................................2, 3, 4

*Mott v. Anheuser-Busch, Inc.*,
    910 F. Supp. 868 (N.D.N.Y. 1995), *aff'd*, 112 F.3d 504 (2d Cir. 1996) ................................33

*NAACP v. Alabama ex rel. Patterson*,
    357 U.S. 449 (1958)..............................................................................................................32

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982)........................................................................................................31, 32

*Nelson v. Pagan*,
    377 S.W.3d 824, 837 (Tex. App.—Dallas 2012, no pet.).......................................................35

*Nolen v. Nucentrix Broadband Networks, Inc.*,
    293 F.3d 926 (5th Cir. 2002) ................................................................................................23

*Null v. Easley*,
    No. 09-cv-296, 2009 WL 3853765 (N.D. Tex. Nov. 18, 2009) .............................................13

*Old Time Enters. v. Int'l Coffee Corp.*,
    862 F.2d 1213 (5th Cir. 1989) ..............................................................................................21

*Organization for a Better Austin v. Keefe*,
    402 U.S. 415 (1971)..............................................................................................................31

*Pavlov v. Parsons*,
    574 F. Supp. 393 (S.D. Tex. 1983) .........................................................................................9

*Price v. Pinnacle Brands, Inc.*,
    138 F.3d 602 (5th Cir. 1998) ................................................................................................24

*Progressive N. Ins. Co. v. Alivio Chiropractic Clinic, Inc.*,
    No. 05-cv-0951, 2006 WL 1072055 (D. Minn. Apr. 21, 2006) .............................................20

*Rambarran v. Mount Sinai Hosp.*,
    No. 06-cv-5109, 2008 WL 850478 (S.D.N.Y. Mar. 28, 2008)...............................................20

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979)...................................................................................23

*Rivera v. AT&T Corp.*,
   141 F. Supp. 2d 719 (S.D. Tex. 2001) ........................................................21

*Roberto's Fruit Mkt., Inc. v. Schaffer*,
   13 F. Supp. 2d 390 (E.D.N.Y. 1998) ..........................................................17

*Rolls-Royce Corp. v. Heros, Inc.*,
   576 F. Supp. 2d 765 (N.D. Tex. 2008) .......................................................2, 5

*Rotella v. Wood*,
   528 U.S. 549 (2000)................................................................................11, 29

*Sedima S.P.R.L. v. Imrex Corp.*,
   473 U.S. 479 (1985)................................................................................11, 26

*Shuman v. Computer Assocs. Int'l, Inc.*,
   762 F. Supp. 114 (E.D. Pa. 1991) ................................................................8

*Snyder v. Phelps*,
   562 U.S. 443 (2011)....................................................................................31

*St. Paul Mercury Ins. Co. v. Williamson*,
   224 F.3d 425 (5th Cir. 2000) ...........................................................21, 28, 29

*Tal v. Hogan*,
   453 F.3d 1244 (10th Cir. 2006) ...................................................................24

*In re Taxable Mun. Bond Secs. Litig.*,
   51 F.3d 518 (5th Cir. 1995) .....................................................................23, 25

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
   975 F.2d 1134 (5th Cir. 1992) .................................................................12, 13

*Thornhill v. Alabama*,
   310 U.S. 88 (1940)......................................................................................31

*Tinsely v. Commissioner*,
   No. 3:96-CV-1969-P, 1998 WL 59481 (N.D. Tex. Feb. 9, 1998)...........................9

*Tompkins v. Cyr*,
   202 F.3d 770 (5th Cir. 2000) .................................................................27, 28

*United Food & Commercial Worker Unions v. Walgreen Co.*,
   719 F.3d 849 (7th Cir. 2013) ...........................................................21, 22, 23

*United States v. Turkette*,
    452 U.S. 576 (1981)........................................................................................21

*Varela v. Gonzales*,
    773 F.3d 704 (5th Cir. 2014) ....................................................................25, 27

*Vierria v. Cal. Highway Patrol*,
    644 F. Supp. 2d 1219 (E.D. Cal. 2009)..............................................................13

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014)......................................................................................5

*Wilson v. Prudential Fin.*,
    332 F. Supp. 2d 83 (D.D.C. 2004) ..................................................................10

*Zastrow v. Houston Auto Imps. Greenway Ltd.*,
    789 F.3d 553 (5th Cir. 2015) ..........................................................................21

**Statutes**

18 U.S.C. § 201 ......................................................................................11, 15, 17

18 U.S.C. § 664 ......................................................................................11, 12, 13

18 U.S.C. § 1512 ....................................................................................11, 18, 20

18 U.S.C. § 1513 ....................................................................................11, 17, 18

18 U.S.C. § 1961(1) .......................................................................................5

18 U.S.C. § 1961(5) .......................................................................................11

18 U.S.C. § 1962(a) ....................................................................................28, 29

18 U.S.C. § 1962(c) ...................................................................................*passim*

18 U.S.C. § 1964(c) ................................................................................11, 23, 24

18 U.S.C. § 1965(a) .......................................................................................8

18 U.S.C. § 1965(b) .......................................................................................2, 7

28 U.S.C. § 1391 ........................................................................................8

28 U.S.C. § 1391(b)(1) ..................................................................................8

28 U.S.C. § 1391(b)(2) ..................................................................................8

28 U.S.C. § 1406(a) .......................................................................................9

**Other Authorities**

CPLR 311-a ....................................................................................................................10

Rule 4(e)(1) ...............................................................................................................9, 10

Rule 4(h) ....................................................................................................................9, 10

FED. R. CIV. P. 4(f) .........................................................................................................9

FED. R. CIV. P. 5(b)(2) ..................................................................................................37

FED. R. CIV. P. 9(b) ................................................................................................12. 14

FED. R. CIV. P. 11 .........................................................................................................36

FED. R. CIV. P. 12(b)(2) ..................................................................................................2

FED. R. CIV. P. 12(b)(3) ..............................................................................................2, 8

FED. R. CIV. P. 12(b)(5) ..............................................................................................2, 9

FED. R. CIV. P. 12(b)(6)......................................................................................2, 10, 17

# INTRODUCTION[1]

Climate change is an issue of contemporary domestic and international politics and public concern. Plaintiff Leonid Goldstein does not believe that carbon-dioxide emissions cause global warming or climate change, much less that either of these effects poses a threat to the planet. But rather than voice his opinion in the public marketplace of ideas, Plaintiff has brought a lawsuit under the Racketeer Influenced and Corrupt Organizations Act ("RICO"),[2] alleging that many supporters of the scientific consensus on climate change—including the approximately forty defendants sued in this case—are "engaged in a long-term criminal scheme." This "criminal scheme" consists of constitutionally protected advocacy that climate change exists and is harmful, voicing opposition to client-change skeptics, and funding efforts to research and combat the effects of climate change.

The Complaint is almost devoid of actual facts and instead is full of positions and inferences that are neither reasonable nor logical, but more importantly are not legally cognizable. The Complaint is frivolous on its face and fails to state claims under RICO as a matter of law. Additionally, this case represents an improper attempt to silence constitutionally protected speech by nonprofit environmental groups and entities that fund them. Allowing the Complaint to go forward would be a waste of the parties' time and money as well as of judicial resources. Accordingly, and for the multiple reasons explained below, the Certain Defendants urge the Court to dismiss Plaintiff's Complaint with prejudice.[3]

---

[1] Pursuant to Local Rule 7.2, Certain Defendants filed a motion with the Court earlier today requesting relief from the Court's 25-page limit for briefs that accompany motions. (ECF No. 26).

[2] 18 U.S.C. §§ 1961–1968 (2012 & Supp. II 2014), *as amended by* Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, § 3(b), 130 Stat. 376, 382.

[3] The "Certain Defendants" are identified in the motion.

## ARGUMENT

Plaintiff's Complaint fails on numerous levels. The Court should dismiss the Complaint (i) pursuant to FED. R. CIV. P. 12(b)(2), as it does not establish the Court's personal jurisdiction over Defendants; (ii) pursuant to FED. R. CIV. P. 12(b)(3), as it does not allege facts making this Court a proper venue; (iii) pursuant to FED. R. CIV. P. 12(b)(5), as several Defendants have not been served properly; and (iv) pursuant to FED. R. CIV. P. 12(b)(6), as it fails to state claims upon which relief may be granted insofar as Plaintiff fails to allege sufficient predicate acts, injury, or causation as necessary for a RICO claim, his claims are time-barred, and the First Amendment protects Defendants' alleged conduct.

## I.   THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.

As an initial matter, Plaintiff's Complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(2), because nowhere does he set forth facts demonstrating that the Court may exercise personal jurisdiction over any of the defendants. While RICO provides for nationwide service of process, 18 U.S.C. § 1965(b) (2012), Plaintiff must establish that the Court has personal jurisdiction over at least one of the defendants engaging in the alleged conspiracy. *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 779–80 (N.D. Tex. 2008); *see also Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (plaintiff bears the burden of establishing a prima facie case of personal jurisdiction). Plaintiff fails to satisfy his burden here, and regardless, the exercise of personal jurisdiction would violate Defendants' due-process rights.

Texas's long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by the Due Process Clause. *See Flores v. Koster*, Civ. No. 3:11-CV-0726-M-BH, 2013 WL 506555, at *3 (N.D. Tex. Jan. 14, 2013). To satisfy due process, Plaintiff must demonstrate

that a defendant is subject to general personal jurisdiction or specific personal jurisdiction, and

the Court must gauge whether exercising personal jurisdiction would in any event offend

"'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Panda Brandywine Corp.*

*v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001)).

### A.    Defendants Are Not Subject to General Personal Jurisdiction in Texas.

Plaintiff fails to carry his burden of establishing that any defendant is subject to general

personal jurisdiction. He does not allege that any defendant is incorporated in Texas,

headquartered in Texas, or otherwise has "affiliations with [Texas that] are so continuous and

systematic as to render [it] essentially at home in [Texas]." *Monkton*, 768 F.3d at 432 ("It is . . .

incredibly difficult to establish general jurisdiction in a forum other than the place of

incorporation or principal place of business." (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 761

(2014)). Not one of the forty named defendants is alleged to be incorporated in Texas or to have

its principal place of business in Texas. On the contrary, Plaintiff affirmatively alleges that thirty-

nine of the forty named defendants are incorporated or headquartered elsewhere. (ECF No. 1

Compl. ¶¶ 15–19, 21–22, 24–39.)[4]

Nor does Plaintiff allege facts suggesting that any defendant has continuous and

systematic affiliations with Texas sufficient to subject it to general jurisdiction in the state. *See*

*Monkton*, 768 F.3d at 432. While Plaintiff contends that two of the forty named defendants are

licensed to do business and solicit donations "in many states . . . including Texas" (Compl.

¶ 25(b)–(c)), this falls far short of establishing that these defendants are "at home" in Texas.

"[R]egistration to do business in Texas, without more, does not suffice to establish general

jurisdiction." *Fiduciary Network, LLC v. Buehler*, Civ. Action No. 3:15-cv-0808, 2015 WL

---

[4] Plaintiff fails to allege any information as to where the remaining defendant, Fenton
Communications Corporation, is domiciled. (*Id.* ¶ 23.)

2165953, at *5 (N.D. Tex. May 8, 2015) (citing *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992). And even if Plaintiff alleged that any or all defendants conducted business or solicited donations in Texas (as opposed to merely registering to do so), those allegations would also be insufficient to confer general personal jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927–28 (2011) ("corporation's continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity."); *Daimler*, 134 S. Ct. at 762 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them."). Plaintiff has not alleged any facts suggesting any defendant is "at home"—and thus subject to general jurisdiction—in Texas.

### B. Plaintiff Fails To Allege Any Basis for Specific Personal Jurisdiction.

Plaintiff also fails to allege any facts supporting the exercise of specific personal jurisdiction, which requires that a defendant "purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there," and that Plaintiff's cause of action arises "out of or result[s] from the defendant's forum-related contacts." *Monkton*, 768 F.3d at 433 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). Plaintiff's allegations fail to meet this standard because they are either wholly conclusory, relate solely to injury purportedly caused in Texas (primarily to people *other than Plaintiff*), or do not give rise to Plaintiff's civil RICO claim.

Plaintiff's bald assertions of an unspecified connection between the so-called "Climate Alarmism Enterprise" and Texas do not support finding specific jurisdiction over any defendant. (*See* Compl. ¶ 164 ("The Climate Alarmism Enterprise's activities have entailed significant contacts with and effects in Texas."); *id.* ¶ 165 ("Many actions of each and every Defendant and the Climate Alarmism Enterprise as a whole have been directed towards or occurred within

4

Texas."); *id.* ¶ 169 ("[I]t is clear that various members of the Climate Enterprise and their ongoing activities have significant connections to Texas, and that the Climate Alarmism Enterprise has caused Plaintiff to suffer substantial damages in Texas.").) These vague and conclusory allegations offer no factual basis to support exercise of specific personal jurisdiction over any defendant and should thus be ignored. *See Rolls-Royce*, 576 F. Supp. 2d at 786.

In addition, even ignoring their dearth of detail, Plaintiff's allegations that he and other Texans were somehow injured by some or all of the defendants do not support a finding of specific personal jurisdiction. (*See* Compl. ¶ 167 (alleging that Defendants embezzled from pension or welfare funds that have Texans as beneficiaries), *id.* ¶¶ 173–74 (estimating that Plaintiff suffered $30,000 in lost wages or other income in Texas); *id.* ¶ 175 (alleging that Plaintiff suffered damage in Texas as the result of supposed embezzlement from Social Security funds or other unidentified funds)).) An alleged injury suffered by Plaintiff within the forum state is insufficient to establish specific personal jurisdiction. *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) ("mere injury to a forum resident is not a sufficient connection to the forum").

Finally, Plaintiff's remaining allegations offered to show some connection to Texas do not give rise to any of Plaintiff's civil RICO claims and thus cannot support a finding of specific personal jurisdiction. For example, Plaintiff's contention that some or all of Defendants "contacted multiple companies in Texas and other states" to urge them not to hire Plaintiff (Compl. ¶ 173) cannot support a finding of specific jurisdiction because Defendants' alleged actions are not a predicate act under RICO. *See* 18 U.S.C. § 1961(1) (intentional interference with contract not listed among predicate acts supporting civil RICO liability); *see also Creed Taylor, Inc. v. CBS, Inc.*, 718 F. Supp. 1171, 1180 (S.D.N.Y. 1989) ("The insufficiency of a defamation charge as a RICO predicate act is ascertainable from the face of the statute"). Nor do

Plaintiff's allegations of supposed injuries to companies located in Texas (Compl. ¶¶ 165, 168) give rise to Plaintiff's claim, as these allegations do not support a claim that Defendants have harmed *Plaintiff*.

**C.   Exercising Personal Jurisdiction Over Any Defendant Would Offend Traditional Notions of Fair Play and Substantial Justice.**

Even if the Complaint could somehow be construed to establish that any defendant had sufficient minimum contacts with the forum, it should be dismissed because the exercise of personal jurisdiction over Defendants would offend traditional notions of fair play and substantial justice. To determine whether exercising jurisdiction over a defendant runs afoul of traditional notions of fair play and substantial justice, courts assess (1) the burden on the defendants, (2) the state's interests, (3) the plaintiff's "interest in obtaining convenient, effective relief," (4) the judiciary's interest in efficiently resolving controversies, and (5) the state's interest in "furthering important social policies. *Domain Prot. LLC v. Keating*, Civ. Action No. 3:15-CV-2244-L, 2016 WL 5661649, at *3 (N.D. Tex. Sept. 30, 2016). Forcing the parties to litigate this case in Texas would place a substantial and unfair burden on Defendants, all of whom are domiciled outside the state. In contrast, Plaintiff alleges no connection between the invented Climate Alarmism Enterprise and Texas that would suggest that Texas has any interest in having these claims litigated within its borders, or that the judiciary's interest in efficiently resolving controversies would be better served by hearing this case in Texas rather than anywhere else. The balance of traditional notions of fair play and substantial justice weighs strongly in favor of dismissing Plaintiff's claims.

**D.   The "Ends of Justice" Do Not Require Exercising Jurisdiction.**

Finally, even if Plaintiff could satisfy his burden of demonstrating personal jurisdiction over at least one defendant, the "ends of justice" do not require the Court to exercise jurisdiction

over Defendants who would not otherwise be within the Court's jurisdictional reach. *See* 18 U.S.C. § 1965(b). Section 1965(b) provides that where "it is shown that the ends of justice require that other parties residing in any other district be brought before the court," the Court may exercise jurisdiction over nonresident parties. *Id.* Whether the "ends of justice" require exercising jurisdiction over all Defendants in a civil RICO claim depends on:

> (1) the existence of another forum where all defendants would be subject to personal jurisdiction; (2) whether most defendants are amenable to jurisdiction within the chosen forum; (3) the likelihood and extent of delay in the event of transfer to another forum; (4) possible prejudice to the plaintiff if required to litigate in a distant forum; (5) the inconvenience to defendants of litigating in the plaintiff's chosen forum; (6) judicial economy; and (7) any allegations of a nationwide RICO conspiracy.

*Flores v. Koster*, Civ. No. 3:11-CV-0726-M-BH, 2013 WL 4874117, at *5 n.8 (N.D. Tex. June 28, 2013). These factors weigh heavily against the Court's exercising an extraordinary power over parties outside its normal jurisdictional reach. As noted, even if Plaintiff could demonstrate jurisdiction over one defendant, all or at least the vast majority of Defendants are not amenable to jurisdiction in Texas. Plaintiff's allegations of the residency of certain Defendants in other jurisdictions do not suggest that he would be foreclosed from bringing his RICO suit—however ill-advised and ill-conceived—in another forum. *See Jordan v. Maxfield & Oberton Holdings LLC*, 3:15-CV-220-CWR-LRA, 2016 WL 1173100, at *5 (S.D. Miss. Mar. 22, 2016) ("[T]he ends of justice do not support jurisdiction over a non-resident when there is an alternative forum in which the RICO suit could be heard against all defendants."). Judicial economy and convenience to the parties also weigh against the Court exercising jurisdiction here. Indeed, while all nonresident Defendants will be subject to extraordinary inconvenience based on the current location of this lawsuit, convenience of location is apparently not a priority to Plaintiff, given his curious decision to file this suit in a district in which he does not reside.

For all of these reasons, justice requires that the Complaint be dismissed for lack personal jurisdiction.

## II.    VENUE IS IMPROPER.

Plaintiff's Complaint should be also dismissed due to lack of proper venue in this district pursuant to FED. R. CIV. P. 12(b)(3). Venue in this district is improper under both the general venue statute, 28 U.S.C. § 1391 (2012), and the civil RICO venue provision, 18 U.S.C. § 1965(a). As noted, none of the defendants resides in Texas, or is subject to personal jurisdiction with respect to Plaintiff's claims. Thus venue cannot be based on 28 U.S.C. § 1391(b)(1) (venue proper in judicial district in which any defendant resides, if all defendants are residents of the state where the district is located) or (b)(3) (if no other basis for venue under the statute, venue is proper in judicial district in which any defendant is subject to personal jurisdiction with respect to the plaintiff's claims), or 18 U.S.C. § 1965(a) (venue is proper in any "district in which [the defendant] resides"). *See also* § 1391(c)(2) (for purposes of venue, corporate defendants "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question"). Likewise, Plaintiff's allegations do not come close to demonstrating that "a substantial part of the events or omissions giving rise to the claim occurred" in this district, and thus venue is not proper under 28 U.S.C. § 1391(b)(2). Finally, the Complaint contains no allegations that any defendant "is found, has an agent, or transacts his affairs" in the Northern District of Texas. *See* 18 U.S.C. § 1965(a); *Shuman v. Computer Assocs. Int'l, Inc.*, 762 F. Supp. 114, 116 (E.D. Pa. 1991) ("The term 'is found' . . . mean[s] presence and continuous local activity."); *Gatz v. Pensoldt*, 271 F. Supp. 2d 1143, 1158 (D. Neb. 2003) ("'transacts his affairs' . . . mean[s] that the defendants regularly transact business of a substantial and continuous character within the district" (internal quotation marks omitted)).

While transfer for improper venue rather than dismissal is authorized when in the interests of justice, *see* 28 U.S.C. § 1406(a) (2012), here transfer is improper as Plaintiff's claims are utterly devoid of merit. *See Liu v. Hopkins Cnty.*, Civ. Action No. 14-cv-1762 (TSC), 2015 WL 4978682, at *3 (D.D.C. Aug. 20, 2015) (noting where "plaintiff's success on the merits appears unlikely, transfer is not in the interest of justice," and dismissing civil RICO claim for improper venue where complaint contained no facts suggesting there was "any sort of agreement and coordination necessary to state a claim for relief"). Plaintiff's Complaint should therefore be dismissed due to lack of proper venue in this district.

## III.   PLAINTIFF FAILS TO PROPERLY SERVE SPECIFIC DEFENDANTS.

Plaintiff failed to properly serve certain of the foreign Defendants, including Generation Investment Management LLP ("GIM-UK") and Climate Action Network ("CAN"), with process and the Court therefore lacks personal jurisdiction over these defendants, who "challenge . . . the method of service attempted by the plaintiff," and the lack of delivery of the summons and complaint. *See* FED. R. CIV. P. 12(b)(5); *Pavlov v. Parsons*, 574 F. Supp. 393, 399 (S.D. Tex. 1983); *Tinsely v. Commissioner*, No. 3:96-CV-1969-P, 1998 WL 59481, at *3 (N.D. Tex. Feb. 9, 1998).

Plaintiff failed to properly serve GIM-UK, a UK entity, and CAN, a German entity because he attempted to do so by serving their respective U.S. affiliates, GIM-US, and USCAN. This is insufficient. Where, as here, service is not made directly on the foreign entity under Federal Rule of Civil Procedure 4(f) and in accordance with international procedures (such as the Hague Convention), service must comport with the procedures set out in Rule 4(h) for serving a foreign entity within the United States. Rule 4(h) instructs that service may be effected on a foreign entity in the U.S. by either (1) following the procedures for serving individuals provided for in Rule 4(e)(1), or (2) serving "a managing or general agent, or any other agent authorized by

appointment or by law to receive service of process." Plaintiff's service efforts fail to comply with either of these methods.

Under Rule 4(e)(1), Plaintiff was required to abide by Texas service procedures, and by serving the domestic affiliates of these foreign entities, Plaintiff failed to do so. This is because there is no evidence that the domestic affiliate on which service was made is "an agent authorized to receive service of process on [] behalf" of the foreign entity. *Master Capital Sols. Corp. v. Araujo*, 456 S.W.3d 636, 640 (Tex. App. 2015).[5] Absent such a showing, service of process is "ineffective" and "invalid." *Id.* For this same reason, Plaintiff failed to comply with Rule 4(h)'s alternative method for serving an "agent" of the foreign entity. Again, there is no evidence or allegation that any of these domestic affiliates are agents of the related foreign entities.

## IV. PLAINTIFF FAILED TO STATE A PLAUSIBLE CLAIM UNDER CIVIL RICO.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it asserts facts that allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This determination is context-specific and requires the Court to draw upon its own experience and common sense. *Id.* A "civil RICO claim must involve: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct,

---

[5] To the extent that Plaintiff alleges that he complied with service requirements for the state in which service was made on these domestic affiliates, such argument must also fail as each of these states similarly requires that service be made on an "agent" of the foreign entity. *See, e.g.*, N.Y. CPLR 311-a; N.Y. Bus. Corp. Law § 306 (McKinney); D.C. Super. Ct. Civil R. 4(h)(1); *Angelich v. MedTrust, LLC*, 910 F. Supp. 2d 128, 131 (D.D.C. 2012); *Wilson v. Prudential Fin.*, 332 F. Supp. 2d 83, 87–89 (D.D.C. 2004).

or control of an enterprise." *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1461 (5th

Cir. 1991) (citing 18 U.S.C. § 1962(a)–(d)). Civil RICO is limited to plaintiffs "injured in [their]

business or property by reason of a violation of [18 U.S.C. §] 1962." 18 U.S.C. § 1964(c) (2012).

Moreover, a plaintiff's civil RICO claim is subject to a four-year statute of limitations. *See*

*Rotella v. Wood*, 528 U.S. 549, 553 (2000).

Here, Plaintiff's claim must be dismissed because (a) he fails to plausibly allege any

predicate acts of racketeering by Defendants; (b) he fails to plausibly allege that the alleged

"enterprise" took any actions distinct from those of the individual defendants; (c) he fails to

establish that he suffered any cognizable injury to confer standing under civil RICO; (d) his

claim is barred by civil RICO's statute of limitations, and (e) his RICO claims purport to make

actionable conduct protected by the First Amendment.

### A.      Plaintiff Has Not Plausibly Alleged Any Predicate Acts of Racketeering.

Plaintiff's claims under Section 1962(c) must be dismissed because he fails to allege a

"pattern of racketeering activity." *Sedima S.P.R.L. v. Imrex Corp.*, 473 U.S. 479, 496 (1985). A

pattern of racketeering activity requires a showing of "at least two acts of racketeering activity."

18 U.S.C. § 1961(5). Plaintiff alleges as predicate acts that Defendants committed embezzlement

from an employee-benefit plan (18 U.S.C. § 664 (2012)), bribery (18 U.S.C. § 201 (2012) and

certain other state laws), retaliation against a witness (18 U.S.C. § 1513 (2012)), and witness

tampering (18 U.S.C. § 1512 (2012)). (Compl. ¶¶ 56, 58, 91–155.) Plaintiff's sixty-nine-page

Complaint contains little more than spurious and speculative allegations as to these requisite

predicate acts—allegations that are plainly insufficient under the applicable pleading standards

and compel dismissal of his 18 U.S.C. § 1962(c) claim as a matter of law. Moreover, Plaintiff

impermissibly "lumps together" all Defendants without pleading any specific facts as to each

defendant's alleged involvement. *In re MasterCard Int'l, Inc., Internet Gambling Litig.*, 132

F. Supp. 2d 468, 476 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002). Such wholesale

allegations are insufficient as a matter of law because "[a] person cannot be held liable for a

RICO conspiracy 'merely by evidence that he associated with other . . . conspirators or by

evidence that places the defendant in a climate of activity that reeks of something foul.'" *Chaney*

*v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010) (quoting *United States v. Posada–Rios*,

158 F.3d 832, 858 (5th Cir. 1998)).

### 1.    Plaintiff's Embezzlement Claim Does Not Meet Rule 9(b)'s Heightened Pleading Requirements.

A claim of embezzlement under 18 U.S.C. § 664 constitutes an allegation of fraud that

must be plead with sufficient particularity in accordance with Federal Rule of Civil

Procedure 9(b). *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992)

(where predicate RICO act sounds in fraud, it must meet Rule 9(b)'s particularity requirements);

*Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 264 (S.D.N.Y. 2011) (allegations of

embezzlement must be plead with particularity under Rule 9(b)). Rule 9(b) at a minimum

requires Plaintiff to allege the "time, place, and contents of the false representation" upon which

the fraud is based, "as well as the identity of the person making the representation," and the

objective of the fraud. *Tel-Phonic*, 975 F.2d at 1139 (internal quotation marks omitted).

Plaintiff's conclusory allegations of embezzlement under 18 U.S.C. § 664 fail to meet this

standard.

First, Plaintiff alleges that "Defendant Ceres and other Defendants embezzled, attempted

to embezzle, or conspired to embezzle trillions of dollars from pension and welfare plans,

including, but not limited to, the Social Security Trust Fund." (Compl. ¶ 144.) Plaintiff thereafter

alleges that Defendants' alleged embezzlement from the Social Security Trust Fund is based on

Plaintiff's belief that "managers" of "[s]tate- and union-managed pension funds" will "attempt to

divert funds from the Social Security [Fund]" to cover losses incurred by the funds. (*Id.* ¶ 175.) Plaintiff further alleges that "Defendants used illegal means to force publicly traded companies, whose shares were owned by pension and/or welfare funds, to act against their . . . interests" and the "pension and/or welfare funds suffered losses" as a result. (*Id.* ¶ 154.)

Even taken as true, these allegations fail to establish any representation that was made by any particular defendant in an effort to embezzle funds from a pension fund, much less specifying the "time, place, and contents" of any false representation. *Tel-Phonic*, 975 F.2d at 1139 (allegations of mail fraud insufficient as predicate act because complaint "fail[ed] to specify the content of any misrepresentation"); *Null v. Easley*, No. 09-cv-296, 2009 WL 3853765, at *5 (N.D. Tex. Nov. 18, 2009); *Joe N. Pratt Ins. v. Doane*, No. 07-cv-07, 2008 WL 819011, at *6 (S.D. Tex. Mar. 20, 2008); *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1004 (S.D. Tex. 1995).

The only allegation that Plaintiff makes with respect to any particular pension fund is that at some point between "2008–2012," Defendants acted to "conspire[] with and/or induce[] some managers, employees, and/or agents of California Public Employees' Pension System (CalPERS) to invest almost a billion dollars of CalPERS funds in certain 'clean tech' schemes." (Compl. ¶ 155.) Again, this allegation fails to identify the time, place, contents of any false representation, or the identity of any defendant who made such a false representation. Moreover, this allegation fails as a matter of law to establish embezzlement under 18 U.S.C. § 664, which applies only to embezzlement from an "employee benefit plan," and "a government plan, such as CALPERS," is "specifically exclude[d]" from that definition. *Vierria v. Cal. Highway Patrol*, 644 F. Supp. 2d 1219, 1234–35 (E.D. Cal. 2009). Thus, an allegation of embezzlement from CalPERS "do[es] not constitute a violation under 18 U.S.C. § 664." *Id.*

### 2.    Plaintiff's Other Allegations of Predicate Acts Do Not Meet Federal Pleading Standards.

While the other alleged predicate acts alleged by Plaintiff—bribery, witness tampering, and retaliation—do not fall within Rule 9(b)'s heightened pleading requirement, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl.*, 550 U.S. at 557, such that if "accepted as true," the claim for relief is "plausible on its face," *Iqbal*, 556 U.S. at 678. Plaintiff is therefore required to provide "sufficient factual matter" for the Court to reasonably infer that he is entitled to relief. *Id.* The Court need not accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions," *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003) (internal quotation marks omitted), nor must it "strain to find inferences favorable" to Plaintiff, *Goldstein v. MCI Worldcom*, 340 F.3d 238, 244 (5th Cir. 2003) (internal quotation marks omitted). Plaintiff's Complaint fails to satisfy this burden.

### a.    Bribery.

Plaintiff alleges two species of bribery in his Complaint— bribery of witnesses and bribery of officials—neither of which state a plausible claim. (Compl. ¶¶ 116–143.)

### (i)    Bribery of Witnesses.

Plaintiff's charge of "bribery of witnesses" primarily focuses on Defendants' alleged bribery of Michael Mann. According to Plaintiff, Dr. Mann is alleged to have used unsound scientific methods in conducting studies that were published in scientific literature, which were in turn used in the Summary for Policymakers from the IPCC Third Assessment Report and later formed the basis for Dr. Mann's testimony to Congressional committees on climate change. (*Id.* ¶¶ 119–131.) Plaintiff claims that Dr. Mann was rewarded by Defendants "both financially and in other ways" and, without any factual basis, alleges that "Defendants spent somewhere between $50 Million and $2 Billion (including misappropriated public funds) to protect Mann against

criticism [] to empower him." (*Id.* ¶¶ 133–34.) Finally, Plaintiff alleges that Defendants "obstructed and eventually shot down" a probe by the Virginia Attorney General into Dr. Mann's receipt of particular grants. (*Id.* ¶ 134.)

As an initial matter, Plaintiff's allegations with respect to Dr. Mann fail to state a claim for bribery under 18 U.S.C. § 201 because the individuals alleged to have been "bribed" are not federal officers or employees of the federal government. 18 U.S.C. § 201(a)(1). To the extent that Plaintiff is alleging bribery under a state statute as a predicate act, Plaintiff's allegations fail to point to any such statute that Defendants violated. Thus, Plaintiff's allegation of bribery fails to adequately "put Defendants on notice as to what laws they are alleged to have violated." *Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1375 (M.D. Fla. 2005); *see also Dist. 1199P Health & Welf. Plan v. Janssen, L.P.*, No. 07-cv-2860, 2008 WL 5413105, at *13 (D.N.J. Dec. 23, 2008) ("Plaintiffs make no effort to delineate the elements of bribery nor do they cite to any statute which does so, and thus, Plaintiffs have failed to put Defendants on notice as to what laws they are alleged to have violated."); *cf. County of El Paso, Tex. v. Jones*, No. 09-cv-00119, 2009 WL 4730305, at *14 (W.D. Tex. Dec. 4, 2009) (finding that plaintiff sufficiently pleaded its predicate act of bribery where it "specifically cited the state and federal laws on which it relies").[6]

But even if Plaintiff had sufficiently alleged the bribery statute he claims was violated, his allegations would fail under federal pleading standards. When the "conclusory statements" and insinuation are stripped away from Plaintiff's allegations as *Iqbal* instructs this Court to do, 556 U.S. at 678, the only factual assertions remaining are that Dr. Mann testified to Congress,

---

[6] Plaintiff cites the Texas and District of Columbia bribery statutes generally in his Complaint, (Compl. ¶¶ 18, 195, 201), but fails to specify any defendant or even any conduct to which these statutes are intended to apply.  Thus, their mere citation provides no notice to Defendants as to how these laws are alleged to have been violated.

15

and that some unspecified Defendants promoted Dr. Mann's books and speaking engagements. There is no factual support in the Complaint for Plaintiff's claim that Defendants obstructed any investigation into Dr. Mann or his research grants. Plaintiff does not identify any contact that any Defendant had with the Virginia Attorney General at any time. At most, the Court could "infer" the "mere possibility of misconduct," which is insufficient to sustain Plaintiff's bribery claim. *Id.*

Finally, Plaintiff baldly claims that "Defendants bribed employees of NASA Goddard Institute of Space Studies" with absolutely no further allegations or facts. (Compl. ¶ 135.) Again, this is precisely the type of "conclusory statement[]" that *Iqbal* compels the Court to reject in evaluating the sufficiency of Plaintiff's allegations. 556 U.S. at 678. Indeed, not a single fact is alleged to show that any defendant ever even had contact with any employee of NASA.

### (ii) Bribery of Officials.

Plaintiff then alleges that Defendants "bribed and continue to bribe public officials," including some members of Congress and certain state Attorneys General. (Compl. ¶ 136.) Specifically, Plaintiff alleges that Defendants have bribed California Attorney General Kamala Harris, Representative Raul Grijalva, and United States Attorney General Loretta Lynch. Plaintiff's allegations do not sufficiently plead a claim of bribery.

Plaintiff alleges the following:

- Sierra Club Defendants "endorsed" and "actively promoted" Attorney General Harris's Senate campaign. Plaintiff then claims that Attorney General Harris "launched an investigation" into ExxonMobil, the "pretext" for which was "some public interest research," but that Attorney General Harris's hidden motive was that ExxonMobil did not "make sufficient financial contributions to Harris, her party comrades, and [Defendants]." (*Id.* ¶¶ 140–142.)

- Sierra Club "endorsed" and "actively promoted" Rep. Grijalva's re-election bid. Plaintiff then claims that Rep. Grijalva sent letters to the presidents of several universities with professors who testified before Congress in opposition to climate change. Those letters, Plaintiff claims "slandered these academics, and illegally demanded that the Universities . . . conduct extensive discovery and investigation against these persons." (*Id.* ¶¶ 137–139.)

16

- Attorney General Lynch, having "been corruptly influenced or even having conspired with Defendants," thereafter "opened a case against 'climate change deniers.' " (*Id.* ¶ 142.)

Plaintiff fails to state a claim for bribery under 18 U.S.C. § 201. Plaintiff's allegations have absolutely no factual support and are merely his own manufactured conclusions. There is nothing more than supposition and innuendo to show any connection between the conduct of any defendant and the actions of Attorney General Harris, Rep. Grijalva, or Attorney General Lynch, and Plaintiff's bribery claims therefore cannot pass muster under federal pleading standards to "constitute sufficiently alleged predicate acts." *See Kaye v. D'Amato*, 357 F. App'x 706, 713 (7th Cir. 2009) (bribery allegations insufficient where plaintiff "fail[ed] to allege even a single communication between [defendant] and [official] or any other fact which would support a reasonable inference of an illicit agreement"); *Roberto's Fruit Mkt., Inc. v. Schaffer*, 13 F. Supp. 2d 390, 399–400 (E.D.N.Y. 1998) (bribery insufficiently pleaded as predicate act where despite "baldly stated accusation" of bribery, there was nothing other than plaintiffs' "wholly conclusory and self-serving" allegations; "no explanation as to the who, what, where, when, why and how").

### b.    Retaliation.

Plaintiff alleges that Defendants violated 18 U.S.C. § 1513 and committed retaliation when they "caused, attempted, or conspired to cause bodily injuries" to scientists and experts who testified in "official proceedings" related to carbon dioxide" and that Defendants "counseled, commanded, or induced others to retaliate against" these same individuals. (Compl. ¶¶ 92, 95.) These allegations are nothing more than a "formulaic recitation of the elements of a cause of action" for retaliation, and are insufficient to overcome a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 555. Plaintiff alleges no facts as to what injury was caused to these individuals, when it occurred, or the official proceedings they are alleged to have testified

in; nor does he allege when or how Defendants communicated with "others" to retaliate, the substance of any such communications, or which Defendants participated in which communications.

Plaintiff claims that "[o]n multiple occasions since 1996, Greenpeace and some other Defendants retaliated against these . . . witnesses by damaging tangible property of ExxonMobil and other companies, which the Defendants believed to have been 'linked' to the witnesses." (Compl. ¶ 96.) This allegation is insufficient to show any "plausible" claim for relief. *Iqbal*, 556 U.S. at 678. Plaintiff fails to identify any official proceeding that was intended to be interfered with as a result of this act of retaliation. *See Druz v. Boro of Manasquan*, No. 05-cv-4088, 2006 WL 1098029, at *5 (D.N.J. Apr. 3, 2006) (finding that plaintiff's claim of retaliation under 18 U.S.C. § 1513 could not be sustained where no federal proceeding alleged to have been interfered with); *McKinney v. State of Ill.*, 720 F. Supp. 706, 708 (N.D. Ill. 1989) (finding that plaintiff failed to plead predicate act of retaliation where she failed to identify any official proceeding associated with the retaliation). Moreover, Plaintiff provides no factual basis to conclude that Defendants believed this property to be "linked" to any alleged witness. *Ezike v. Mittal*, No. 08-cv-1867, 2009 WL 506867, at *4 (N.D. Cal. Feb. 27, 2009) (predicate act of retaliation could not support RICO claim where "there [was] no factual connection between the [defendant] and [the] retaliation").

### c.    Witness Tampering.

Finally, Plaintiff's allegations of witness tampering similarly fail to show any basis for a claim under 18 U.S.C. § 1512. Plaintiff alleges that Defendants' alleged acts of retaliation form the basis of his witness tampering claims as "they had the intent and effect of influencing or preventing testimonies of other persons in official proceedings related to carbon dioxide."

18

(Compl. ¶ 98.) Because, as discussed, Plaintiff's retaliation allegations are inadequately pled, they cannot form the basis for Plaintiff's witness-tampering allegations.

Plaintiff further alleges that Defendants' alleged witness tampering "included smear campaigns in the media, character assassination, and interference with the lawful employment of witness, and had the intent of influencing or preventing testimonies of other persons in official proceedings related to carbon dioxide." (*Id.* ¶ 100.) According to Plaintiff, these alleged intimidation campaigns prevented "at least 20,000" witnesses from testifying in proceedings. (*Id.* ¶ 103.) This allegation is outrageous on its face. First of all, Plaintiff admits that his bases for concluding that "at least 20,000" witness tampering counts took place are the signatures to a petition where there "were questions about the signatures verification procedures" and "prank signatures were found there." *Id.* But even if Plaintiff could identify all 20,000 individuals, "generalized threats to intimidate" are insufficient; Plaintiff must identify an "actual[,] future . . . proceeding," and nowhere does Plaintiff identify which proceedings these witnesses purportedly would have testified in absent Defendants' alleged conduct. *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 410 (S.D.N.Y. 2013).

Plaintiff makes myriad other allegations against "Defendants" in support of his bogus witness-tampering claim, including:

- Defendants "launched campaigns to threaten and intimidate" other experts in order to keep them from testifying at official proceedings, "or forced them to withhold parts of their testimonies if they attended." (Compl. ¶ 105.)

- Defendants "threaten[] or harass[] persons within two degrees of separation" from witnesses they are attempting to intimidate. (*Id.* ¶ 106.)

- Defendants ran "perfectly orchestrated public campaign[s]" intended to threaten the members of climate-change-denying organizations. (*Id.* ¶ 107.)

- Defendants "corruptly persuaded, attempted, or conspired to corruptly persuade witnesses in official proceedings" by testifying to certain false climate-change facts. (*Id.* ¶¶ 108–11.)

19

- Defendants "counseled, commanded, or induced employees" of government agencies or those receiving government grants "to corruptly alter" data and "present results of dubious" studies. (*Id.* ¶ 112.)

- Defendants told "many lies" in order to "corruptly persuade" witnesses from testifying. (*Id.* ¶ 113.)

These allegations present no facts from which the Court could infer witness tampering: there is no allegation of who these witnesses are, what proceedings they were intending to testify in, when or how Defendants communicated with these alleged witnesses, the substance of any communications with these witnesses, or which Defendants participated in the communications with these witnesses. Plaintiff does not even identify which of the several witness-tampering offenses under 18 U.S.C. § 1512 Defendants are alleged to have violated. Simply stated, there is no "arguable basis in law or fact for these claims." *Houston v. Manheim-New York*, 475 F. App'x 776, 780 (2d Cir. 2012) (affirming dismissal of pro se complaint alleging witness tampering under 18 U.S.C. § 1512); *see also Ezike*, 2009 WL 506867, at *4 (RICO claim dismissed where plaintiff failed to allege "factual connection" between defendant and the "predicate racketeering activities," including witness tampering); *Rambarran v. Mount Sinai Hosp.*, No. 06-cv-5109, 2008 WL 850478, at *8 (S.D.N.Y. Mar. 28, 2008) (finding allegations of witness tampering as predicate act insufficient where there was "no suggestion that any defendant threatened, intimidated, or otherwise persuaded [witness] to testify in a certain way"); *Progressive N. Ins. Co. v. Alivio Chiropractic Clinic, Inc.*, No. 05-cv-0951, 2006 WL 1072055, at *2 (D. Minn. Apr. 21, 2006) ("vague allegation, which does not even attribute" alleged tampering to a particular defendant is "insufficient to establish . . . witness tampering").

### B.    Plaintiff Fails To Allege Racketeering Activity Conducted by a Distinct RICO Enterprise.

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person'

referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *see Old Time Enters. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir. 1989). The enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also Boyle v. United States*, 556 U.S. 938, 947 (2009); *Zastrow v. Houston Auto Imps. Greenway Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015) (dismissing complaint that "[c]onstrued generously . . . alleges an enterprise created by the alleged racketeering activity itself"). Moreover, the "enterprise must be more than an association of individuals or entities conducting the normal affairs of a defendant corporation." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 447 n.16 (5th Cir. 2000); *see also In re Brokerage Anti. Litig.*, 618 F.3d 300, 378 (3d Cir. 2010) (holding that an enterprise involves the commission of violations that its members could not accomplish on their own, such as bid rigging). Thus, to survive a motion to dismiss, Plaintiff must allege something more than a group of defendants taking actions to carry out their own business.

The Fifth Circuit applied this principle in *Atkinson v. Anadarko Bank & Trust Co.*, dismissing a RICO suit claiming an association-in-fact between a bank, its holding company, and several employees because the alleged racketeering activity (the mailing of false loan statements) was the activity of the bank, one of the RICO persons, not the activity of a separate and distinct enterprise. 808 F.2d 438, 441 (5th Cir. 1987); *see also Rivera v. AT&T Corp.*, 141 F. Supp. 2d 719, 726 (S.D. Tex. 2001) (dismissing RICO claim against cable providers because "Plaintiffs' own allegations demonstrate that the allegedly usurious acts were committed as part of each corporation's cable business," and that any association "exists merely for purposes of providing cable services in exchange for a monthly fee"). Similarly, in *United Food & Commercial Worker Unions v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013), the Seventh Circuit dismissed a

Section 1962(c) claim against multiple unaffiliated corporate defendants because the plaintiff failed to allege that actions were conducted on behalf of an enterprise that was distinct from the conduct of defendants' individual business operations. *Id.* at 854–55 (holding that even specific allegations of communication among defendants were insufficient to plausibly establish that a distinct enterprise, rather than individual defendants, carried out illegitimate acts).

So, too, with the Complaint here. Plaintiff alleges in conclusory terms that Defendants are members of the "Climate Alarmism Enterprise" (Compl. ¶¶ 41–59), but the supposed predicate acts—to the extent they are based on factual allegations at all, *see supra*—are attributed either to a particular defendant or in conclusory fashion to all forty defendants. The allegations are wholly "consistent with [defendants] each going about [their] own business," and do not support a plausible inference that a distinct enterprise took any action at all. *United Food*, 719 F.3d at 855. Plaintiff alleges that certain Defendants gave funding or grants to others, but the ordinary business of Defendants like the Environmental Grantmakers Association, the Rockefeller Brothers Fund, the Ford Foundation, and the other foundation defendants and members of the so-called "Financial Cartel" is to make grants consistent with their respective organizations' charters and bylaws. (*See* Compl. ¶¶ 47–48, 88, 89); *see also Allstate Ins. Co. v. Benhamou*, Civ. Action No. 4:15-CV-00367, 2016 WL 3126423, at *14 (S.D. Tex. June 2, 2016) (receipt of funds or materials does not establish participation in RICO enterprise). Likewise, it is the ordinary business of advocacy organizations to seek funding for their activities and to share information about their mailing lists and members. (*See* Compl. ¶ 51.) Any claims of coordination are nothing more than allegations that the defendants had a business relationship, "not that they had

joined together to create a distinct entity" for purposes of carrying out some illegal conduct.
*United Food*, 719 F.3d at 855).[7]

### C. Plaintiff Cannot Establish Standing Under Section 1962 Because He Has Not Suffered a Cognizable Injury That Was Caused by the Alleged Predicate Acts.

The Complaint should be dismissed with prejudice for the additional reasons that Plaintiff does not have standing to initiate a civil RICO action because his allegations do not support a plausible inference that he has been "injured in [his] business or property by reason of a violation of [18 U.S.C. §] 1962." 18 U.S.C. § 1964(c). "[A] RICO plaintiff must satisfy two elements—injury and causation." *Hastey v. Bush*, No. Civ. A. 503CV0088C, 2003 WL 22289885, at *6 (N.D. Tex. Oct. 6, 2003) (Cummings, J.) (citing *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998)). This language "helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff," *Ironworkers Local Union 68 v. AstraZeneca Pharms., LP*, 634 F.3d 1352, 1361 (11th Cir. 2011) (internal quotation marks omitted).

### 1. Plaintiff Fails To Allege a Cognizable Injury.

To establish injury, Plaintiff must demonstrate that he has suffered a "concrete financial loss." *In re Taxable Mun. Bond Secs. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995). It is not enough that he may suffer damages in the future, *id.*, or that he suffers an "intangible property interest," *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). The "injury must be conclusive and not speculative." *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 409 (5th Cir.

---

[7] Because Plaintiff's claim under Section 1962(c) fails as a matter of law, his Section 1962(d) claim for RICO conspiracy to violate Section 1962(c) likewise fails. *Nolen v. Nucentrix Broadband Networks, Inc.*, 293 F.3d 926, 930 (5th Cir. 2002).

2015) (internal quotation marks omitted). Generously construed, the Complaint asserts three forms of injury, none of which is sufficient to confer standing.

First, Plaintiff alleges that he has suffered reputational injury as a critic of the "Climate Cult" who has "published his criticism of the pseudo-science" and "articles and blog posts critical of the politics of climate alarmists." (Compl. ¶¶ 171–72, 190.) But injury to one's personal reputation is not actionable under RICO because it is not an injury to "business or property." 18 U.S.C. § 1964(c); *see, e.g.*, *Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006) ("[I]njury to reputation, dignity and emotional damages are not the type of injuries redressable by . . . RICO[,] which [is] expressly limited to injuries to business or property." (internal quotation marks omitted)); *Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763, at *11–12 (D. Md. Mar. 17, 2015) (collecting cases); *see generally Price*, 138 F.3d at 607 n.20 (holding that a civil RICO plaintiff cannot seek damages for personal injury). Nor can Plaintiff recover for injuries to his "professional qualification, judgement [sic], and capabilities," which "constitute nothing more than pecuniary losses flowing from what is, at base, a personal injury." *Evans v. City of Chi.*, 434 F.3d 916, 926–31 (7th Cir. 2006), *vacated on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013); *Hamm v. Rhone-Poulenc Rorer Pharms.*, 187 F.3d 941, 954 (8th Cir. 1999) (holding that injury to business reputation is not cognizable) (collecting cases).[8]

In any event, Plaintiff fails to explain how Defendants' alleged racketeering activities have injured him personally, rather than others who share his views; indeed, he concedes that he

---

[8] While the Fifth Circuit once suggested that injury to business reputation could be cognizable under certain circumstances, *see Khurana v. Innovative Health Care Sys., Inc.*, 130 F.3d 143, 150–51 (5th Cir. 1997), *vacated sub nom. Teel v. Khurana*, 525 U.S. 979 (1998), vacated decisions like *Khurana* have no precedential value, *see, e.g.*, *Asgeirsson v. Abbott*, 696 F.3d 454, 459 (5th Cir. 2012).

is not on any of the so-called "Target Lists." (Compl. ¶¶ 79, 172.) Plaintiff's suggestion that he is a "climate denier" and is "easily recognized as such within seconds by anybody with an Internet access," is wholly speculative, and fails. (*See id.* ¶¶ 172–73.) Plaintiff consequently has failed to allege that he has suffered any injury to his reputation.

Plaintiff's allegations of damage "exceeding $30,000 from lost wages or other income" and injury to "his business and employment opportunities" fare no better. (*See id.* ¶¶ 173–74.) Damages based on lost future opportunities are generally not recoverable because they "require[] extensive speculation," rather than the "calculation of present, actual damages." *Taxable Mun. Bond*, 51 F.3d at 522–23, and are "too speculative to confer standing." *See, e.g.*, *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990) (lost business opportunities not cognizable).

And Plaintiff fails to plausibly allege that he has suffered past injury through lost wages and employment. Plaintiff's only allegation in this regard, apart from the unsupported assertion of $30,000 in lost wages and undisclosed lost business opportunities, is that "Defendants contacted multiple companies in Texas and other states, demanding that they not hire Plaintiff and . . . not do any business with Plaintiff." (Compl. ¶ 173.) These allegations are deficient because he does not say (1) which Defendants made these alleged contacts, (ii) whom they contacted, (iii) when those contacts occurred, (iv) the basis for the claim of a loss of $30,000 in wages, or (v) what specific and non-speculative business opportunities were lost—all information that is reasonably within his knowledge. Complaints have been deemed inadequate to establish RICO standing based upon substantially more. *See, e.g.*, *Varela v. Gonzales*, 773 F.3d 704, 711–12 (5th Cir. 2014) (rejecting allegations of injury despite use of official government records to estimate losses).

Plaintiff's third purported injury suffers from the same deficiencies. In allegations that border on incomprehensible, Plaintiff asserts that he has "been paying into the Social Security [Fund] for more than 15 years" and "has savings in a retirement plan protected by [ERISA]." (Compl. ¶ 13.) He then proceeds to claim that Ceres and other defendants have embezzled "trillions of dollars from pension and welfare funds, including, but not limited to, the Social Security Trust Fund," because they have advocated for pension and welfare funds to invest in renewable energy, which "no person or private business is willing to waste their money on." (*Id.* ¶¶ 144, 148.) Even under the most deferential review, these allegations—which appear to relate to prospective loss—fail to establish a cognizable injury. The references to the Social Security trust fund are false: the fund may invest only in certain classes of United States Treasury notes.[9] Renewable energy has nothing to do with it. This Court has rejected similar claims of injury based on "frivolous" factual allegations, and it should do likewise here. *See Hastey*, 2003 WL 22289885, at *6 (dismissing RICO complaint based on allegations against "Animal Rightists").

### 2.    Plaintiff Cannot Allege Causation.

Even if Plaintiff could allege a cognizable injury, he cannot establish causation sufficient to support RICO standing because as a matter of law Defendants' alleged racketeering activities were not the "but-for" and proximate cause of his supposed injuries. *See Sedima*, 473 U.S. at 497. To satisfy "but-for" causation, Plaintiff must articulate a plausible theory of causation tying his injuries to one of the specified predicate acts—tampering with or retaliating against witnesses to official proceedings, bribing witnesses or public officials, or embezzling welfare or pension

---

[9] Social Security Administration, Office of the Chief Actuary, "Trust Fund FAQs," found at https://www.ssa.gov/oact/progdata/fundFAQ.html (last visited Oct. 11, 2016) ("By law, income to the trust funds must be invested, on a daily basis, in securities guaranteed as to both principal and interest by the Federal government. All securities held by the trust funds are 'special issues' of the United States Treasury.").

funds. *See Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 13 (2010) (plurality opinion). Proximate causation, in turn, "demand[s]" not merely *some* relation but "*direct* relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (emphasis added); *see Anza v. Ideal Supply Corp.*, 547 U.S. 451, 457–61 (2006) ("[T]he central question . . . is whether the alleged violation led directly to the plaintiff's injuries."). If Plaintiff's theory of causation involves more than one "step," the directness requirement is not met. *Hemi Grp.*, 559 U.S. at 9–10 (plurality); *Holmes*, 503 U.S. at 271. To survive a motion to dismiss, Plaintiff must articulate a plausible theory of *how* Defendants' predicate acts directly caused his injuries. *See Varela*, 773 F.3d at 709–11.

For the most part, Plaintiff's allegations amount to nothing more than an attack on Defendants' lawful exercise of their First Amendment right to express their views and persuade the public to adopt their position on matters of public concern. (*See infra* Part 0.) To the extent that Plaintiff's injuries were caused by Defendants' protected activities, the First Amendment bars recovery. *Tompkins v. Cyr*, 202 F.3d 770, 780 n.4 (5th Cir. 2000) (holding that civil RICO plaintiff may recover "only those losses proximately caused by" unprotected conduct; lawful First Amendment conduct is outside the scope of the statute). By his own admission, Plaintiff's alleged reputational injuries were caused by Defendants' public advocacy (*see* Compl. ¶ 172), and those acts cannot provide a basis for RICO standing.

Plaintiff's remaining allegations fail because they do not suggest any rational relationship between the alleged racketeering activities, much less a direct one. Plaintiff does not claim to have been a witness or participant in an official proceeding, and so he cannot plausibly allege that his injuries were caused by those predicate acts. Moreover, Plaintiff's specific factual allegations contradict his conclusory allegations of causation. He blames his reputational injury

27

and lost wages and business opportunities not on an alleged predicate act, but rather on the Defendants' public advocacy on the issue of global warming, as well as their contacting companies and "demanding" that they neither employ nor do business with him. Nor does he present any plausible allegation to explain how Defendants' alleged embezzlement resulted in the loss of pension and welfare funds. The conduct directly responsible for Plaintiff's alleged loss of welfare and pensions funds was not Defendants' "embezzlement," which Plaintiff fails to explain in any sense, but the decision by "managers" of "[s]tate- and union- managed pension funds" to exercise their "significant political power [to] attempt to divert funds from the Social Security [Fund]." (Compl. ¶ 175.) As noted, this diversion never happened, and even if it had happened due to the Defendants' lobbying activities, the lobbying activities are protected activity outside the scope of civil RICO. *See Tompkins*, 202 F.3d at 780 n.4.

### 3.   Plaintiff Fails To Allege an Investment Injury as Required To State a Claim Under § 1962(a).

While all of Plaintiff's claims should be dismissed for failure to adequately allege injury or causation, Plaintiff's Section 1962(a) claim should also be dismissed for an independent reason: he fails to allege plausibly an investment injury.

Under Section 1962(a), Plaintiff must prove (1) the existence of an enterprise, (2) Defendants' derivation of income from a pattern of racketeering activity, and (3) the use of any part of that income in acquiring an interest in or operating the enterprise. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000). Moreover, he must plausibly allege a "nexus between the claimed violation and [his] injury; that is, the injury must flow from the use or investment of racketeering income." *Id.*

Plaintiff's conclusory allegation that he has suffered injury "[a]s a direct and proximate cause of the Defendants' violations of 18 U.S.C. § 1962(a)" (Compl. ¶ 197) is inadequate to

28

allege an investment injury. *See Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) ("Conclusory allegations are insufficient to state a claim under § 1962(a)."). Plaintiff's Section 1962(a) claim is nothing more than a repackaged claim under Section 1962(c). But "injuries due to predicate acts cannot form the basis of an investment injury for purposes of § 1962(a)." *Williamson*, 224 F.3d at 443. On the contrary, only injuries sustained due to Defendants' use of investment income can support a claim under Section 1962(a) claim. In the absence of such allegations here, the Section 1962(a) claim should also be dismissed.

### D.   Plaintiff's Claims Are Barred by Civil RICO's Four-Year Statute Of Limitations.

The Court should dismiss the Plaintiff's civil RICO claims with prejudice on the basis that they are time-barred, as the alleged predicate acts occurred outside of RICO's four-year statute of limitations. *See Rotella*, 528 U.S. at 553; se*e also Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 156 (1987). This circuit has adopted an "injury discovery rule," whereby "a civil RICO claim accrues when the plaintiff discovers, or should have discovered, the injury." *Joseph v. Bach & Wasserman, LLC*, 487 F. App'x 173, 176 (5th Cir. 2012) (quoting *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 773 (5th Cir. 2000)).

This four-year statute of limitations is consonant "with the basic policies of all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." *Rotella*, 528 U.S. at 555; se*e also Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1420 (2012) (noting that the "general purpose" of statutes of limitations is "to protect defendants against stale or unduly delayed claims" (quoting *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008))). These principles strongly support a finding that the civil RICO claims brought against Defendants are now time-barred. The civil RICO claims alleged in the Complaint were brought more than four years—in

some cases *decades*—after the alleged predicate acts that form the basis for such claims against Defendants.[10]

In short, Plaintiff knew or should have known long before September 12, 2012—the operative date for determining whether Plaintiff's civil RICO claims against Defendants are barred by the statute of limitations—of the alleged activities and alleged "injuries" that form the basis for his civil RICO claims. Accordingly, in keeping with the four-year statute of limitations for pursuit of RICO claims, as well as the "general purpose" of such limitations periods to "protect defendants against stale or unduly delayed claims," *Credit Suisse*, 132 S. Ct. at 1420, the court should dismiss these claims with prejudice. *See Bach & Wasserman*, 487 F. App'x at 176 (affirming district court's dismissal of civil RICO claim based on statute of limitations without affording plaintiff an opportunity to amend).

### E.     Plaintiff's Claims Implicate the First Amendment.

Plaintiff fails to state a claim under civil RICO for an additional reason: his case represents an extraordinary attempt to silence First Amendment-protected speech by nonprofit

---

[10] *See, e.g.*, Compl. ¶¶ 2, 188 (alleging "Climate Alarmism Enterprise" existed in 1988); *see also id.* ¶ 16 (alleging general participation in "Climate Alarmism Enterprise" in "1989 or earlier"); *id.* ¶ 18 ("2008 or earlier"); *id.* ¶ 21 ("2006, or earlier"); *id.* ¶ 22 ("1997 or earlier"); *id.* ¶ 29 ("2001 or earlier"); *id.* ¶ 31 ("1993 or earlier"); *id.* ¶ 32 ("1994 or earlier"); *id.* ¶ 33 ("1993 or earlier"); *id.* ¶ 34 ("1995 or earlier"); *id.* ¶ 35 ("2002 or earlier"); *id.* ¶ 36 ("2002 or earlier"); *id.* ¶ 38 ("2008 or earlier"); *id.* ¶ 39 ("2001 or earlier"); *id.* ¶¶ 47–48 (alleging "financial relationships" in 2003); *id.* ¶ 71 (alleging "Climate Alarmism Enterprise was tightly linked to UN agencies" in the "1960s"); *id.* ¶ 90 (alleging that "not later than from 2010" several defendants "gave money to scientific societies and media organizations"); *id.* ¶ 92 (alleging that in 2006, Defendants started causing, attempting to cause, or conspiring to cause "bodily injuries . . . to certain scientists and experts"); *id.* ¶¶ 93, 94 (alleging retaliation against scientists who passed away in 2008 and 2000); *id.* ¶¶ 96, 99 (alleging retaliation in 1996); *id.* ¶ 130, 131 (alleging Defendants "incentivized" witness to testify falsely before the U.S. Senate "[o]n July 29, 2003," and again before the U.S. House "[o]n July 27, 2006"); *id.* ¶ 134 (alleging Defendants "obstructed and eventually shot down" a "probe" by the Virginia Attorney General in "April 2010"); *id.* ¶ 177(b) (alleging Defendants "have been undermining or attempting to undermine US military defenses from 1980's"); *id.* ¶ 177(e) (alleging "sharp escalation in climate alarmism activity in 2004-2006").

environmental groups and the nonprofit and other organizations that fund them. Plaintiff's attempt to co-opt the antiracketeering laws to silence speech on issues of public concern that he does not agree with must fail. In *New York Times Co. v. Sullivan*, the United States Supreme Court reaffirmed the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks." 376 U.S. 254, 270 (1964). Advocacy groups and the organizations that fund them have long been subject to attack under the guise of law by those who disagree with their positions, and the First Amendment has provided protection from such attacks, and does so here.

Plaintiff's sprawling Complaint is intended to curtail Defendants' public speech on environmental issues—specifically, climate change. When stripped of invective and extraneous material, Plaintiff's claims all come down to the same basic facts: Defendants' public statements and actions regarding the issue of climate change. These statements and activities were over decades, by different parties (many of whom are not defendants), in different locations (many outside the United States), on a multitude of topics. Although framed as RICO predicate acts, upon close inspection they are no more than claims to stifle protected speech.

### 1.      Advocacy Is Protected Speech Under the First Amendment.

Defendants' political advocacy on the issue of climate change is within the core of First Amendment protection. Public reports, petitions, articles, and protests are types of speech and behavior clearly entitled to protection. This includes even "hurtful" speech. *Snyder v. Phelps*, 562 U.S. 443, 446 (2011). Such speech may, for instance, coerce or embarrass others into boycotting businesses and still retain its constitutional protection. *Thornhill v. Alabama*, 310 U.S. 88 (1940); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 910 (1982); *see also Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971). The First Amendment fully protects even "threats of

social ostracism, vilification, and traduction," *Claiborne Hardware Co.*, 458 U.S. at 921, including the criticisms Plaintiff complains of, such as "label[ing individuals] as 'climate change deniers' or 'climate deniers'" (Compl. ¶ 172).

Plaintiff's claims run afoul of not just the right to free speech but also, in the context of its RICO claims, the right of association. There is no dispute that the nonprofit and the funding entities Plaintiff sued and the John Doe individuals he purported to sue here work both independently and in parallel to advocate for environmental change, and fund those efforts.[11] "[T]here are, of course, some activities, legal if engaged in by one, yet illegal if performed in concert with others, but political expression is not one of them." *Citizens Against Rent Control/Coalition for Fair Hous. v. Berkeley*, 454 U.S. 290, 294 (1981) ("the practice of persons sharing common views banding together to achieve a common end is deeply embedded in the American political process"). "Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as [the Supreme Court] has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958). Where Defendants represent millions of supporters and work together to advance their concerns, Plaintiff cannot use RICO laws to trample First Amendment-protected activities.[12]

---

[11] Claims against fictitious defendants like the Doe defendants are nullities under the Federal Rules of Civil Procedure and subject to dismissal. *See Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 643 (N.D. Tex. 2007).

[12] Plaintiff asserts meritless claims that the Defendants—many of whom are nonprofits—have endeavored to "obtain[] huge profits" (Compl. ¶ 57) by obtaining donations to support their advocacy efforts (*id.* ¶ 84). These allegations ignore longstanding Supreme Court precedent on charitable organizations. In *Village of Schaumburg v. Citizens for a Better Environment*, the Court rejected a municipality's effort to impose restrictions on charities that used more than a certain percentage of donations on salaries and expenses on the theory that they were a "for-profit enterprises," because "this cannot be true of those organizations that are primarily engaged in research, advocacy, or public education and that use their own paid staff to carry out these

### 2.   All of Plaintiff's Claims Are Based on Protected Speech.

Plaintiff's Complaint demonstrates that each of his claims is, at its root, based on Defendants' speech about issues of public interest. Plaintiff complains that Defendants have:

- taken "extreme anti-scientific positions" (Compl. ¶ 6);

- erroneously claimed a scientific consensus regarding climate change (*id.* ¶ 75);

- published lists of scientists "who testified or were expected to testify in official proceedings adversely to the Defendants' interests," regarding the climate change issue (*id.* ¶¶ 79–87, 91–95, 100);

- funded "climate pseudo-science" (*id.* ¶ 90); and

- "persuade[d] . . . witnesses" to offer false testimony by providing statements and information in support of their position that climate change poses an environmental risk (*id.* ¶¶ 108–13).

Patently, these categories relate to issues of profound public importance. In the defamation context, courts recognize that all matters of environmental harm and safety are matters of legitimate public concern. *See, e.g.*, *Mott v. Anheuser-Busch, Inc.*, 910 F. Supp. 868, 874 (N.D.N.Y. 1995) ("violations of environmental regulations implicate issues of environmental safety and public health"), *aff'd*, 112 F.3d 504 (2d Cir. 1996); *Container Mfg. Inc. v. CIBA-GEIGY Corp.*, 870 F. Supp. 1225, 1234–35 (D.N.J. 1994) (storage of chemicals "pose potentially severe health and environmental risks to society"). Indeed, Texas's Citizens Participation Act, Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011 (West 2014), like most anti-SLAPP statutes,

---

functions as well as to solicit financial support." 444 U.S. 620, 636–67 (1980). The Court further held that restrictions on "organizations whose primary purpose is . . . to gather and disseminate information about and advocate positions on matters of public concern" were barred by the First Amendment. *Id.* Solicitations by charities are also protected by the First Amendment. *Id.* at 633 (citing *Bates v. State Bar of Ariz.*, 433 U.S. 350, 363 (1977)).

specifically applies to an "[e]xercise of the right of free speech," regarding "a matter of public concern," defined to include "an issue related to . . . environmental, economic, or community well-being." *Id.* § 27.001(3). Thus, Defendants' speech regarding the climate-change issue—either by engaging in petitioning and free-speech acts to educate the public about climate change or by funding such efforts—are all protected speech on a matter of public concern. Although Plaintiff tries to reframe such speech as predicate "acts," these allegations are manifestly speech-based advocacy protected by the First Amendment.

### 3.   Plaintiff Cannot Recast Defamation as Other Claims To Avoid a First Amendment Challenge.

In addition to the significant First Amendment barriers to using RICO and its treble damages threat to chill speech, Plaintiff cannot evade constitutional free-speech protections by reformulating what would otherwise constitute defamation claims as different causes of action. (*See, e.g.*, Compl. ¶ 173 (complaining the Defendants have "maliciously smeared and defamed Plaintiff"); *id.* ¶ 138 (claiming Defendants "slandered . . . academics"); *id.* ¶¶ 130, 131, 132 (complaining of "false statements").[13] In *Hustler Magazine, Inc. v. Falwell*, the Supreme Court held that in addition to barring Falwell's defamation claim, the First Amendment also barred his intentional infliction of emotional distress claim arising from the same publication. 485 U.S. 46, 50, 54–57 (1988). Constitutional protections "are not peculiar to [defamation] actions but apply to all claims whose gravamen is the alleged injurious falsehood of a statement." *Blatty v. N.Y.*

---

[13] Notably, many of Plaintiff's "slander" claims allege harm to others and thus cannot form the basis of any defamation action that he may assert. *See, e.g.*, *Guimbellot v. Rowell*, 184 F. App'x 447, 450 (5th Cir. 2006) ("To be actionable, the defamatory communication must be of and concerning the plaintiff or, directly or indirectly, cast a personal reflection on the plaintiff." (internal quotation marks omitted)). Moreover, Plaintiff's various "slander" and "libel" allegations pertain to speech by unspecified defendants from years or even decades past, which would be far outside any applicable statute of limitations. *See, e.g.*, Tex. Civ. Prac. & Rem. Code Ann. § 16.002(a) (West 2002) (one-year statute of limitations for defamation).

*Times Co.*, 728 P.2d 1177, 1181–84 (Cal. 1986) (broadly applying constitutional limitations protecting free speech to different causes of action so as not to "frustrate the[] underlying purpose" of the constitutional protections).[14]

Courts thus dismiss claims based on the same underlying speech that would otherwise state a defamation claim, if the defamation claim fails. *Nelson v. Pagan*, 377 S.W.3d 824, 837 (Tex. App.—Dallas 2012, no pet.) (affirming summary judgment on causes of action for intentional infliction of emotional distress and tortious interference with employment that arise out of alleged defamatory statements); *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) ("[b]ecause [plaintiffs'] defamation claim fails, so do their other tort claims based upon the same allegedly defamatory speech"); *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 317 (D.C. Cir. 1994) ("[A] plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim." (*citing Cohen v. Cowles Media Co.*, 501 U.S. 663, 671 (1991))); *Idema v. Wager*, 120 F. Supp. 2d 361, 369–70 (S.D.N.Y. 2000) (rejecting state claims for conspiracy and intentional infliction of emotional distress based on same speech).

In this context, given the constitutional concerns, courts do not distinguish between federal and state claims if the underlying acts are protected speech; for example, courts have rejected Lanham Act claims where they merely restated defamation claims. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511–13 (1984). Likewise, courts dismiss suits like Plaintiff's aimed at stifling speech under the guise of other claims. *See, e.g.*, *Koch Indus., Inc. v. Doe*, No. 2:10CV1275DAK, 2011 WL 1775765, at *2–9 (D. Utah May 9, 2011) (dismissing

---

[14] *See also Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d 1068, 1082 (C.D. Cal. 1998) (rejecting "creative pleading" to avoid "First Amendment limitations placed on litigation against speech" (internal quotation marks omitted)).

various claims brought against anonymous members of Youth for Climate Truth aimed at stifling their advocacy).

## CONCLUSION

For the foregoing reasons, the Certain Defendants urge the Court to dismiss Plaintiff's Complaint with prejudice and, accordingly enter judgment in their favor and against Plaintiff. If the Court determines to dismiss the Complaint without prejudice, the Certain Defendants request that the Court inform Plaintiff of the potential sanctions for filing frivolous complaints under Federal Rule of Civil Procedure 11. To be clear, the Certain Defendants are not making a motion for any sanctions at this time, but they may do so should Plaintiff refile such a baseless complaint in the future.

Dated: October 13, 2016

Respectfully submitted,

**/s/ Lawrence M. Doss**

Stephen M. Ryan (*pro hac vice* pending)
D.C. Bar No. 359099
sryan@mwe.com
Sam C. Neel (*pro hac vice* pending)
D.C. Bar No. 1027756
sneel@mwe.com
The McDermott Building
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, DC 20001
(202) 756-8000
(202) 756-8087 fax

*Attorneys for The Ford Foundation*

Lawrence M. Doss (Tex. Bar No. 24012544)
LDoss@mhba.com
MULLIN HOARD & BROWN, L.L.P.
Post Office Box 2585
Lubbock, Texas 79408
806.765.7491
806.765.0553 fax

*Attorney for Attorney for Climate Action Network, US Climate Action Network, Rockefeller Brothers Fund Inc., Ceres Inc., Environmental Grantmakers Association Corp., Sierra Club Foundation Corp., and The Ford Foundation*

| W. Brad Nes | Lindsey B. Cohan (Tex. Bar No. 24083903) |
|---|---|
| Texas State Bar No. 24051109 | Lindsey.Cohan@dechert.com |
| brad.nes@morganlewis.com | DECHERT LLP |
| MORGAN, LEWIS, & BOCKIUS, L.L.P. | 300 W. 6th Street, Suite 2010 |
| 1111 Pennsylvania Avenue, N.W. | Austin, Texas 78731 |
| Washington, D.C. 20004 | 512.394.3000 |
| Telephone: (202)739-5779 | |
| Facsimile:  (202)739-3001 | *Attorney for Generation Investment Management LLP and Generation Investment Management US* |

| *Attorney for The Pew Charitable Trusts* | *LLP* |
|---|---|
| Matthew E. Miller (*pro hac vice* pending) mmiller@foleyhoag.com Kevin J. Conroy (*pro hac vice* pending) kjconroy@foleyhoag.com FOLEY HOAG LLP 155 Seaport Boulevard Boston, MA 02210 (617) 832-1000 (617) 832-7000 fax  *Attorneys for Ceres, Inc.* | Thomas R. Burke DAVIS WRIGHT TREMAINE, LLP Suite 800 505 Montgomery Street San Francisco, California  94111-6533 (415) 276-6552 thomasburke@dwt.com  Lacy H. Koonce, III DAVIS WRIGHT TREMAINE, LLP Avenue of the Americas, 21st Floor New York, NY 10020-1104 (212) 603-6467 lancekoonce@dwt.com  *Attorneys for Sierra Club Foundation* |

## CERTIFICATE OF SERVICE

On October 12, 2016, I electronically submitted the **Certain Defendants' Brief in Support of Their Motion To Dismiss** with the clerk of court for the United States District Court for the Northern District of Texas using the electronic case-filing system of the Court. I hereby certify that I have served all counsel and pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Lawrence M. Doss
Lawrence M. Doss